STATE OF NEBRASKA, APPELLEE, V. WILLIAM RANDOLPH,
APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. ROBERT COLEMAN,
APPELLANT.

183 N. W. 2d 225

Filed January 22, 1971. Nos. 37551, 37552.

Paul E. Watts and Michael N. Schirber, for appellants.

Clarence A. H. Meyer, Attorney General, and Ralph H. Gillan, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

Defendants, William Randolph and Robert Coleman, were charged with assault with intent to rob; and imprisoning a person for the purpose of compelling the performance of an act by another. The cases were consolidated for trial. A jury found the defendants guilty on both counts. They were each sentenced to 2 to 7 years on the assault count, and to life imprisonment on the kidnapping count.

On the evening of July 9, 1969, Valdis Lusins and his wife, Nancy, were entertaining their neighbors, William

and Celia Woodward at the Lusins' home in Omaha, Nebraska. Sometime around 11 p.m., two men entered the Lusins' residence, both armed with guns. They were not masked or disguised, although the larger man wore a hat, sun glasses, and rubber gloves. The larger of the two gunmen forced Mr. Lusins to change his clothes. For purposes of robbery, he then forced Lusins to drive to a supermarket near 72nd and Dodge Streets. Lusins was the manager of the supermarket. The smaller of the two gunmen stayed in the Lusins' home guarding Mrs. Lusins and the Woodwards. After extended investigation at and around the supermarket, the robbery attempt was abandoned when it appeared that a security guard and police cars were on and near the premises. After some 30 to 45 minutes, Mr. Lusins and the larger gunman returned to the Lusins' home. The gunmen remained in the Lusins' home for an additional 5 or 10 minutes, warned and threatened the witnesses about calling the police and about later identification, and left. The entire episode took approximately 1 hour.

During that time, all four of the witnesses had an opportunity to observe both gunmen for some 5 minutes at the beginning of the incident and 5 to 10 minutes at the conclusion while in the well-lighted Lusins' home. For 30 to 45 minutes Mr. Lusins had had an extended and thorough opportunity to observe the larger gunman inside and outside the car and in varying lighting conditions. The other three witnesses, during the same period of time, had observed the smaller gunman in the Lusins' home.

Some 15 minutes after the departure of the gunmen, the police were called. Upon their arrival, descriptions of the two gunmen were given to the police. On the following day, Mr. Lusins went to the police station and was shown several hundred pictures in an effort to identify the gunmen. He did not identify anyone. On at least one other occasion, a police officer brought a single photograph to the store which Mr. Lusins was

unable to identify. On July 25, 1969, a police officer brought six photographs, three each of two different men, to Lusins' store. Lusins promptly and positively identified the two men pictured as the gunmen. The pictures were later shown to Mrs. Lusins at her residence. Thereafter they were shown to the Woodwards separately. All four witnesses made a positive identification of the gunmen. At the time of the identification by the four witnesses on July 25th, the two defendants were not in police custody in Nebraska but apparently were in custody in Sacramento, California. One of the three pictures of each defendant which was shown to each of the four witnesses bore an identification from the sheriff's department of Sacramento, California.

Mr. and Mrs. Lusins testified at the preliminary hearing and at the trial. Mr. and Mrs. Woodward testified at the trial. All four witnesses testified that their identifications were based upon seeing the men at the time of the crime and nothing else. Immediately following the impaneling of the jury, a hearing was held outside the presence of the jury on defendants' motions to exclude the testimony of pretrial identifications and in-court identifications. The court determined the identification testimony to be admissible. The motions were overruled and the trial proceeded.

The defendants' assignments of error rest primarily on the contention that the photographic identifications were impermissibly suggestive and tainted the in-court identification sufficiently to violate due process of law. Defendants also contend that they were entitled to counsel under the rules established by United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967).

We think it clear that this case does not fall within the post-indictment lineup area circumscribed by Wade. Neither is it reasonable to term the photographic identification here a critical stage in a prosecution which has not yet focused on anyone. Even where the defendant was under arrest, Judge Friendly said in United States

v. Bennett, 409 F. 2d 888 (2d Cir., 1969): "* * * to require that defense counsel be allowed or appointed to attend out-of-court proceedings where the defendant himself is not present would press the Sixth Amendment beyond any previous boundary. None of the classical analyses of the assistance to be given by counsel * * * suggests that counsel must be present when the prosecution is interrogating witnesses in the defendant's absence even when, as here, the defendant is under arrest; * * *."

The defendants' claim to a right to counsel at the pretrial, preindictment, prearrest photographic identification by witnesses involved here is completely untenable.

The case of Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968), is determinative of the issue here. While there was no issue as to the right to counsel in that case, there was the assertion that the photographic identification procedure was so unduly prejudicial as to taint the conviction. Mr. Justice Harlan, speaking for the court about the use and hazards of the technique of initial identification by photograph, said: "We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

The circumstances affecting visual observance here can be characterized as similar to those in Simmons except that here the four witnesses involved had far greater and longer opportunity for observation than did any of the witnesses in Simmons. As the court said there: "Notwithstanding cross-examination, none of the witnesses displayed any doubt about their respective identifications of Simmons. Taken together, these circumstances leave

little room for doubt that the identification of Simmons was correct, even though the identification procedure employed may have in some respects fallen short of the ideal."

In the factual context presented, the identification procedure used in this case clearly did not deny the defendants due process of law. See, also, United States v. Bennett, *supra;* United States v. Ballard, 423 F. 2d 127 (5th Cir., 1970); Davida v. United States, 422 F. 2d 528 (10th Cir., 1970).

The defendants also contend that the sentences of life imprisonment imposed under Count II were improper and not authorized. At the time of the commission of the crime here, July 9, 1969, section 28-417, R. R. S. 1943, provided a mandatory sentence of life imprisonment upon conviction under the charge contained in Count II. The 1969 Legislature amended section 28-417, R. R. S. 1943, by reclassifying degrees of the crime of kidnapping and reduced the penalty under Count II to imprisonment for not less than 3 nor more than 50 years. That amendment, with the emergency clause, became effective September 19, 1969. The informations against the defendants in district court were filed September 30, 1969. The defendants were convicted November 28, 1969, and sentenced December 26, 1969.

There was no specific provision in the amending statute indicating legislative intent as to its prospective or retroactive operation. Section 49-301, R. R. S. 1943, provides that repeal of a statute shall not in any manner affect pending actions nor causes of action accrued prior to any such repeal except as may be provided in the repealing statute. This "saving clause" on repeal applies to both civil and criminal statutes.

While there is still some divergence of opinion among the states, we believe the better rule to be and we therefore hold that where a criminal statute is amended by mitigating the punishment, after the commission of a

prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically provided otherwise.

The basic issue is, of course, the intention of the Legislature. As the Supreme Court of California said in In re Estrada, 63 Cal. 2d 740, 48 Cal. Rptr. 172, 408 P. 2d 948 (1965): "It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology."

In People v. Oliver, 1 N. Y. 2d 152, 151 N. Y. S. 2d 367, 134 N. E. 2d 197 (1956), the court said: "As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts." The North Carolina court phrased it thus: "When, however, the law under which a defendant was convicted is amended pending appeal so as to mitigate the punishment, it is logical to assume that the legislature intended the new punishment, which it now feels fits the crime, to apply whenever possible." State v. Pardon, 272 N. C. 72, 157 S. E. 2d 698 (1967). See, also, 21 Am. Jur. 2d, Criminal Law, § 578, p. 542; In re Fink, 67 Cal. 2d 692, 63 Cal. Rptr. 369, 433 P. 2d 161 (1967).

The convictions of both defendants on all counts and the sentences of both defendants under Count I are affirmed. The sentences under Count II are vacated and the causes remanded to the district court for resentencing

on Count II, under the provisions of section 28-417, R. S. Supp., 1969.

AFFIRMED IN PART, AND IN PART REMANDED WITH DIRECTIONS.