STATE OF NEBRASKA, APPELLEE, v. DANIEL WARREN KING, APPELLANT.

336 N.W.2d 576

Filed July 15, 1983. No. 82-698.

Daniel A. Fullner of Moyer, Moyer, Egley & Fullner, for appellant.

Paul L. Douglas, Attorney General, and Mark D. Starr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

HASTINGS, J.

This is an appeal from the District Court of Madison County where the defendant, Daniel Warren King, was convicted of failure to appear under Neb. Rev. Stat. § 29-908 (Reissue 1979). Because the defendant had two prior felony convictions and was convicted of felony failure to appear, he was thereafter found to be an habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 1979) and was sen-

tenced to a term of 10 years in the Nebraska Penal and Correctional Complex.

On appeal the defendant assigns two errors. Basically, the defendant argues that the trial court erred in failing to instruct the jury that the court has a duty to inform a defendant released on bail of the conditions, penalties, options, and alternatives relating to his release on bail. Also, the defendant argues that one of his prior convictions is not proper for consideration as a felony conviction under the habitual criminal statute.

The basic facts underlying this appeal are as follows. On June 26, 1980, the defendant was charged with theft by unlawful taking under Neb. Rev. Stat. § 28-511(1) (Cum. Supp. 1982), a Class IV felony set forth in Neb. Rev. Stat. § 28-518 (Reissue 1979). On July 3, 1980, the defendant was released on bail after paying into court 10 percent, or $1,000, of a $10,000 bond set by Judge Warren. On August 22, 1980, the defendant pleaded guilty to the theft charge and his bond was continued conditioned only upon his returning to the Madison County District Court for sentencing on September 26, 1980. The defendant failed to appear for sentencing on that date and a bench warrant was issued for his arrest. The defendant was thereafter arrested in Tennessee, and on June 7, 1982, he was returned to the custody of the Madison County Sheriff's Department. The defendant was tried by a jury for failure to appear, and on August 30, 1982, was convicted of that offense.

On September 3, 1982, further proceedings were held to determine if the defendant was an habitual criminal. The evidence adduced at that time showed that the defendant had two prior felony convictions. That evidence disclosed that on June 29, 1976, the defendant had been arrested in Box Butte County for destruction of property, under Neb. Rev. Stat. § 28-572 (Reissue 1975), and breaking and entering an automobile, under Neb. Rev. Stat. § 28-531.02 (Reissue 1975). At trial the defendant pleaded

guilty to the charge of felonious injury or destruction of personal property, causing a loss of over $100. For this offense defendant was sentenced to not less than 1 year nor more than 3 years in the Nebraska Penal and Correctional Complex.

Further, the record reveals that on December 13, 1976, the defendant unlawfully operated a motor vehicle in Dawes County. After a high-speed chase, the defendant fled on foot, eluding arrest. After his arrest for this offense the defendant was released on bail and thereafter failed to appear at his arraignment. The defendant was later arrested and pleaded guilty to a felony charge of failure to appear. On April 27, 1977, he was sentenced to 1 year in the Nebraska Penal and Correctional Complex, to run consecutively with the sentence imposed in Box Butte County.

These two prior convictions and the conviction for failure to appear, which is part of this appeal, constitute the required three convictions carrying a sentence of 1 year or more to declare an individual an habitual criminal under § 29-2221. On the basis of these prior convictions the trial court here found the defendant to be an habitual criminal and sentenced him to 10 years in the Nebraska Penal and Correctional Complex.

The defendant initially attacks his conviction for failure to appear. At trial the defendant offered jury instruction No. 10. This instruction sets forth what he viewed to be the material elements of the offense of failure to appear. In relevant part it stated: "Your verdict in this case must be not guilty unless you are satisfied by the evidence beyond a reasonable doubt of the truth of all of the following material elements, to wit:

. . . .

"6. That when the defendant appeared at any judicial proceeding in which the defendant's bail was considered, the judge at such proceeding informed the defendant of the condition or conditions imposed

on his release, the penalties for violating any of the conditions of such release, and any options or alternatives available to the defendant."

The trial court refused to give this instruction. The court instructed the jury on the elements of the offense of failure to appear, excluding any reference to the duty of the court to inform the defendant of the condition of his bail. The court gave its instruction over defendant's objection.

The defendant bases his argument, that to inform the defendant is a necessary element of the offense of failure to appear, on two Nebraska statutes, as follows:

Neb. Rev. Stat. § 29-901.02 (Reissue 1979) provides: "Any judge who shall authorize the release of a defendant under section 29-901 shall issue a written order containing a statement of the condition or conditions imposed, shall inform the defendant of the penalties for violating any of the conditions of such release, and shall advise the defendant that a warrant for his arrest shall be issued immediately upon such violation."

Neb. Rev. Stat. § 29-901.06 (Reissue 1979) provides: "When a bailable defendant appears at any judicial proceeding in which such defendant's bail is being considered, the judge at such proceeding shall inform the defendant of the condition or conditions imposed on his release, the penalties for violating any of the conditions of such release, and any options or alternatives available to such defendant."

On the basis of these statutes the defendant contends the court must, upon releasing a defendant on bail, inform the defendant of all conditions of his release and the consequences of his failing to meet those conditions. Not only must the court advise the defendant of these initially under § 29-901.02, it is argued, but it must do so at each successive judicial proceeding under § 29-901.06.

Under defendant's theory it seems that if a court releases a defendant on bail but neglects to inform

him that if he fails to return to that court he may be arrested and charged with failure to appear, such defendant may fail to appear in court, as ordered, with impunity. Such a position is without merit. This cannot be the intended result of these statutes. The question remains, What do these statutes mean?

The legislative history of article 9 of chapter 29 of the Nebraska statutes indicates that this legislation was patterned after the federal Bail Reform Act of 1966. See Introducer's Statement of Purpose, Committee on Judiciary, L.B. 828, 83d Leg., 2d Sess. (January 28, 1974).

The portions of the federal act relevant to this case are found at 18 U.S.C. § 3146 and 18 U.S.C. § 3150 (1976). Section 3146 basically parallels Neb. Rev. Stat. §§ 29-901 to 29-901.06 (Reissue 1979). Section 3146(a) is roughly the same as § 29-901. Both sections delineate the court's powers to require certain security as well as to place special conditions, such as restrictions on travel or association, on the defendant in order for his release on bail. Section 3146(c) is almost word for word the same as § 29-901.02. Both require the judge or judicial officer to inform the defendant of the conditions of the defendant's bail.

Section 3150 is strikingly similar to § 29-908. It provides in part: "Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall . . . . (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both . . . ."

Section 29-908 provides in part: "Whoever is charged with a felony and is released from custody under bail, recognizance, or a conditioned release and willfully fails to appear before the court granting such release when legally required or to surrender himself within three days thereafter, shall be

guilty of a Class IV felony, in addition to any other penalties or forfeitures provided by law.''

Several federal court decisions have interpreted what is required of the judge or judicial officer in the way of informing the defendant of his bail conditions. In *United States v. DePugh*, 434 F.2d 548 (8th Cir. 1970), *cert. denied* 401 U.S. 978, 91 S. Ct. 1208, 28 L. Ed. 2d 328 (1971), the effect of the failure to warn a defendant as set out in 3146(c), released on bail, was discussed.

The defendant in that case was prosecuted for failure to appear under § 3150. The court said: ''Section 3148 relating to bail after conviction contains provisions materially different from the provisions of § 3146 and hence it is questionable whether § 3146(c) is applicable to release on bail after conviction.

''The § 3146(c) reference to conditions, modified by the words 'if any', would reasonably appear to refer to special conditions authorized by § 3146(a) such as placing restrictions with respect to travel, association, custody and supervision. The statute fixes no penalty for violation of such conditions. A reasonable basis exists for fully advising a defendant as to precise conditions of the character above described which are imposed and the consequences of violations.

''Here no conditions of such type were imposed. Defendant has posted a bond to assure his appearance when required. His obligation is limited to appearance when required and the penalty for his failure to do so is clearly set out in § 3150. Defendant was told by the court that his bond is for the purpose of assuring his appearance when required. Defendant by virtue of his prior criminal experience was certainly aware of the necessity of his appearance in court at all material stages of criminal proceedings against him.

. . . .

''We do not believe that Congress intended in the

factual situation here presented that an order stating conditions and a warning as to the penalties for violation would be a condition precedent or an essential element of the offense set out in § 3150. The statute itself clearly sets out the duty to appear as required and the penalty for failure so to do." *Id.* at 552-53.

This rationale was followed in *United States v. Eskew*, 469 F.2d 278 (9th Cir. 1972): "Eskew asserts that under 18 U.S.C. § 3146(c) the trial judge erred by failing to inform him that his nonappearance would result in forfeiture of his bail. Eskew's reliance on § 3146(c) is misplaced. Section 3146(c), which requires a judicial officer to inform a person of the penalties for violation of the conditions of release, 'refer[s] to special conditions authorized by [18 U.S.C.] § 3146(a) such as placing restrictions with respect to travel, association, custody and supervision." *Id.* at 279.

In *United States v. McGill*, 604 F.2d 1252 (9th Cir. 1979), the court, interpreting these statutes, stated: "We reject McGill's suggestion that the release under the superseding indictment was not under 18 U.S.C. § 3146(a) because the court did not repeatedly tell him he was continued on bond and did not amend the original order of release each time the charge was amended. There is no requirement in the Bail Reform Act that the court repeat the conditions of release each time a defendant is arraigned on a superseding indictment. We can think of no useful purpose to be served by interpolating such a requirement. Subsection 3146(c), requiring a statement of release conditions, applies to special conditions, such as restrictions on travel or association. *United States v. Eskew*, 469 F.2d 278, 279 (9th Cir. 1972); *United States v. DePugh*, 434 F.2d 548 (8th Cir. 1970). There were no special conditions imposed here." *Id.* at 1255.

The rule from these cases seems to be that the court only needs to inform the defendant of any spe-

cial or unusual conditions of his bail, as set out in § 3146(a), or § 29-901 under the Nebraska statute, but there is no duty on the court to inform the defendant of the obvious condition that he return to court as ordered. There is no need to inform the defendant that he must return or be guilty of the offense of failure to appear, as set out in § 3150, or § 29-908 under the Nebraska statutes.

Since the relevant Nebraska statutes have been patterned after the federal act and they parallel this act so closely in their language and form, and since this interpretation of the federal statutes is reasonable and just, we adopt it as the correct interpretation for our laws in Nebraska. As such, we hold that a court, when releasing a defendant on bond, need only inform the defendant of any special or unusual condition attached thereto, as set out in § 29-901, and the court need not inform that defendant of the possible penalty for his simple failure to appear, as set out in § 29-908. This rule applies to the duty to inform the defendant upon his initial release on bail under § 29-901.02, and the duty to inform the defendant in any subsequent judicial proceedings, as required under § 29-901.06.

Having adopted this as the rule in this jurisdiction, we hold that the court did not err in refusing the defendant's proffered instruction No. 10, setting out a duty to inform the defendant of the consequences of his failure to appear, since the record does not reflect that any condition, other than his simple appearance when ordered, was placed upon his bail.

The defendant also argues that his conviction in Dawes County should not be considered for purposes of declaring him an habitual criminal. Therefore, he argues, he has only two felony convictions and three are needed before one may be convicted as an habitual criminal.

As the defendant correctly points out in his brief, he was arrested in Dawes County for operating a motor vehicle to avoid arrest. Neb. Rev. Stat.

§ 60-430.07 (Reissue 1974). The offense for which he was sought was failure to yield, a misdemeanor. The offense of operating a motor vehicle to avoid arrest, as it appeared at the time the defendant committed that offense, was punishable by a possible sentence in the Nebraska Penal and Correctional Complex, and therefore was a felony under Neb. Rev. Stat. § 29-102 (Reissue 1975) as it appeared at that time. Under the law as it existed then, there is no question but that the defendant's conviction for operating a motor vehicle to avoid arrest was a felony conviction.

The defendant goes on to point out that on April 27, 1977, the same day that he was sentenced, a new version of § 60-430.07 was signed by the Governor. Under 1977 Neb. Laws, L.B. 196, the defendant argues, his offense would have been a misdemeanor. This act was passed by the Legislature and became effective 3 months following the June 1 adjournment. It provides that it shall be unlawful for any person operating a motor vehicle (1) to flee in such vehicle to avoid arrest for a felony or (2) to flee to avoid arrest for a misdemeanor, and further provides for a penalty of imprisonment of 1 to 3 years for the subsection (1) violation and up to 6 months for violation of the subsection (2) provision of the statute.

The defendant argues that this prior conviction should be treated as a misdemeanor on the basis of Neb. Rev. Stat. § 29-2204.01 (Reissue 1979), which states: "In any criminal proceeding in which a sentence of confinement has been imposed and the particular law under which such sentence was pronounced is thereafter amended to decrease the maximum period of confinement which may be imposed, then any person sentenced under the former law shall be entitled to his discharge from custody when he has served the maximum period of confinement authorized by the new law, notwithstanding the fact that the court may have ordered a longer period of confinement under the authority of the former law."

Also, the defendant points out this proposition of law: " 'It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage *provided the judgment convicting the defendant of the act is not final. . . .' "* (Emphasis supplied.) *State v. Randolph,* 186 Neb. 297, 302, 183 N.W.2d 225, 228 (1971).

While we do not dispute these points of law raised by the defendant, his argument must fail for several reasons. First of all, as we have held, § 29-2204.01 only applies when the maximum sentence allowable under a statute has been reduced. *State v. Rubek,* 189 Neb. 141, 201 N.W.2d 255 (1972). In this case the maximum penalty, or any of the penalties under this statute, has not been changed. The new statute did not reduce the maximum sentence; it simply repealed the old statute and reclassified the offense so that some are misdemeanors and some are felonies. Therefore, § 29-2204.01 does not apply. *State v. Country,* 194 Neb. 570, 234 N.W.2d 593 (1975).

Also, while it is true that the new version was signed by the Governor on the date the defendant was sentenced, it did not become effective as law until September 2, 1977, some 4 months later. See 2A Neb. Rev. Stat., app. at 1331 (Reissue 1979). This statute did not become law until after the judgment convicting the defendant was final. Therefore, the provision from *Randolph* does not apply to this case.

We find the conviction of the defendant for failure to appear and the finding that he was an habitual criminal to be correct. Therefore, we affirm the ruling of the District Court.

AFFIRMED.