State of Nebraska, appellee, v.
Larry F. Duncan, appellant.
___ N.W.2d ___

Filed October 23, 2015.    No. S-15-083.

1. **Statutes: Appeal and Error.** The meaning of a statute is a question of law which an appellate court resolves independently of the lower court's conclusion.
2. **Criminal Law: Statutes: Legislature: Sentences.** Generally, if the Legislature amends a criminal statute by mitigating the punishment after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature specifically provided otherwise.
3. **Sentences: Final Orders: Appeal and Error.** If a defendant appeals his or her sentence, then the sentence is not a final judgment until the entry of a final mandate.
4. **Criminal Law: Statutes: Evidence: Sentences.** A mitigatory amendment to a criminal statute does not apply to a pending case if the amendment changed the substantive elements of the crime such that a new evidentiary hearing would be needed to determine the defendant's punishment under the law as amended.
5. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Shawn Elliott for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

Larry F. Duncan pleaded no contest to one count of operating a motor vehicle without an ignition interlock device. When the criminal act occurred, driving without an ignition interlock device was a Class IV felony.[1] The Legislature amended the statute while Duncan's case was pending to make the crime a Class I misdemeanor unless the offender had a breath alcohol concentration of .02 of 1 gram per 210 liters or a blood alcohol concentration of .02 of 1 gram per 100 milliliters, in which case the crime remained a Class IV felony.[2] Duncan argues that the amendment retroactively applies to pending cases because it mitigates the punishment. We conclude that the amendment does not apply to Duncan's case because it substantively redefined the crime of driving without an ignition interlock device. We therefore affirm.

## BACKGROUND

In March 2014, the State charged Duncan with one count of operating a vehicle without an ignition interlock device under § 60-6,211.11 (Cum. Supp. 2012) and one count of driving during revocation under Neb. Rev. Stat. § 60-6,197.06 (Reissue 2010), both Class IV felonies.

In October 2014, the parties advised the court that they had reached a plea agreement. Duncan pleaded no contest to driving without an ignition interlock device and to one count of driving during revocation charged in another case. In exchange, the State dismissed the driving during revocation charge in this case.

According to the State's factual basis, on August 30, 2013, a police officer saw Duncan driving a motor vehicle. The

---

[1] See Neb. Rev. Stat. § 60-6,211.11(1) (Cum. Supp. 2012).

[2] See § 60-6,211.11 (Cum. Supp. 2014).

officer recognized Duncan because he had cited Duncan for driving during revocation earlier in the month. He pursued the vehicle and verified that Duncan's operator's license was still revoked. After the vehicle stopped, the officer searched it and did not find an ignition interlock device.

The court received evidence of Duncan's third driving under the influence conviction. As part of the sentence, the trial court forbade Duncan from operating a motor vehicle without an ignition interlock device.

In January 2015, the court sentenced Duncan to 1 to 2 years' imprisonment.

Duncan appeals.

## ASSIGNMENTS OF ERROR

Duncan assigns that the court erred by (1) not sentencing him under a mitigatory amendment that became effective during the pendency of his case and (2) imposing an excessive sentence.

## STANDARD OF REVIEW

[1] The meaning of a statute is a question of law which an appellate court resolves independently of the lower court's conclusion.[3]

## ANALYSIS

### MITIGATORY AMENDMENT

Duncan claims that a statutory amendment during the pendency of his case made his crime a misdemeanor, rather than a felony. At the time of his criminal act, § 60-6,211.11(1) provided:

> Any person who tampers with or circumvents an ignition interlock device installed under a court order or Department of Motor Vehicles order while the order is in effect or who operates a motor vehicle which is not equipped with an ignition interlock device in violation of

---

[3] See *State v. Frederick, ante* p. 243, 864 N.W.2d 681 (2015).

a court order or Department of Motor Vehicles order shall be guilty of a Class IV felony.

In 2014, the Legislature passed L.B. 998, which amended § 60-6,211.11.[4] Section 60-6,211.11, in relevant part, now provides:

> (1) Except as provided in subsection (2) of this section, any person ordered by a court or the Department of Motor Vehicles to operate only motor vehicles equipped with an ignition interlock device is guilty of a Class I misdemeanor if he or she . . . operates a motor vehicle which is not equipped with an ignition interlock device in violation of the court order or Department of Motor Vehicles order.
>
> (2) Any person ordered by a court or the Department of Motor Vehicles to operate only motor vehicles equipped with an ignition interlock device is guilty of a Class IV felony if he or she . . . operates a motor vehicle which is not equipped with an ignition interlock device in violation of the court order or Department of Motor Vehicles order . . . when he or she has a concentration of two-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood or a concentration of two-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath.

L.B. 998 became effective after Duncan committed the criminal act but before he pleaded no contest. The bill had an emergency clause,[5] and the Governor signed it into law in April 2014.[6] The State filed the information in March, Duncan pleaded no contest in October, and the court sentenced Duncan in January 2015. L.B. 998 does not have a saving clause or any other express statement concerning retroactivity.

---

[4] 2014 Neb. Laws, L.B. 998, § 13.

[5] *Id.*, § 20.

[6] Legislative Journal, 103d Leg., 2d Sess. 1490 (Apr. 9, 2014).

[2,3] Generally, if the Legislature amends a criminal statute by mitigating the punishment after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature specifically provided otherwise.[7] We sometimes refer to this rule as the "*Randolph* doctrine," after its progenitor.[8] If a defendant appeals his or her sentence, then the sentence is not a final judgment until the entry of a final mandate.[9]

The starting point of the *Randolph* doctrine is our decision in *State v. Randolph*.[10] There, a jury convicted the defendants of kidnapping and the court sentenced them to life imprisonment. When the criminal acts occurred, a life sentence was mandatory.[11] But an amendment took effect during the pendency of the case which reduced the maximum penalty to 50 years' imprisonment.[12] The defendants argued that the amendment made their life sentences excessive.

In the absence of an express statement of intent, we presumed that the Legislature wanted the new punishment, which it now believed to fit the crime, to apply wherever possible:

"It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the

---

[7] E.g., *State v. Castaneda*, 287 Neb. 289, 842 N.W.2d 740 (2014).

[8] See *State v. Urbano*, 256 Neb. 194, 205, 589 N.W.2d 144, 153 (1999), citing *State v. Randolph*, 186 Neb. 297, 183 N.W.2d 225 (1971).

[9] See *Jones v. Clarke*, 253 Neb. 161, 568 N.W.2d 897 (1997).

[10] *State v. Randolph, supra* note 8.

[11] See Neb. Rev. Stat. § 28-417 (Reissue 1964).

[12] See *id.* (Cum. Supp. 1969).

Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology."[13]

So, we vacated the defendants' life sentences and remanded the cause for resentencing.

But later, we constricted the *Randolph* doctrine in a series of cases involving changes to the rape and sexual assault statutes.[14] For example, in *State v. Country*,[15] the defendant pleaded no contest to forcible rape and the court sentenced him to 10 to 30 years' imprisonment. After the court sentenced the defendant, L.B. 23 became effective and "redefined most nonconsensual sexual crimes."[16] The maximum term of imprisonment for any sexual assault under L.B. 23, § 3, was 25 years.

We identified several reasons why the *Randolph* doctrine did not apply. First, L.B. 23 was "not merely an amendatory act changing the penalty for a particular offense."[17] Instead, it "define[d] new crimes."[18] L.B. 23 repealed several sections, including those defining common-law and statutory rape, rape against a sister or daughter, and assault with intent to rape. In their place, it created two new crimes: sexual assault in the first degree and sexual assault in the second degree. Whether the victim suffered "serious personal injury" was

---

[13] *State v. Randolph, supra* note 8, 186 Neb. at 302, 183 N.W.2d at 228, quoting *In re Estrada*, 63 Cal. 2d 740, 408 P.2d 948, 48 Cal. Rptr. 172 (1965).

[14] See, *State v. Crisp*, 195 Neb. 833, 241 N.W.2d 129 (1976); *State v. Ashby*, 194 Neb. 585, 234 N.W.2d 600 (1975); *State v. Trowbridge*, 194 Neb. 582, 234 N.W.2d 598 (1975); *State v. Country*, 194 Neb. 570, 234 N.W.2d 593 (1975), *disapproved in part on other grounds, State v. Bunner*, 234 Neb. 879, 453 N.W.2d 97 (1990).

[15] *State v. Country, supra* note 14.

[16] *Id.* at 571, 234 N.W.2d at 594, citing Neb. Laws 1975, L.B. 23.

[17] *Id.* at 572, 234 N.W.2d at 594.

[18] *Id.*

relevant to the sentence for both degrees of sexual assault.[19] Serious injury to the victim was not an element of the former statutes.

The record did not show if the defendant seriously injured his victim, and we stated that a remand for an evidentiary hearing was contrary to the Legislature's intent:

> Probably, this determination can be made only by means of an evidentiary hearing unless serious personal injury is admitted. The Legislature, when it enacted L.B. 23, did not contemplate that cases pending on appeal would require [an] evidentiary hearing to determine a new and reduced penalty. Yet as a practical matter this is the only way in which the Randolph doctrine could be made applicable in the present and similar cases.[20]

Furthermore, L.B. 23's "primary purpose" was not to mitigate the punishment for rape.[21] Instead, the law was "procedural and directed to protecting the dignity of the victim and also to [e]nsure effective due process for the person charged."[22] Finally, the State had dismissed a habitual criminal charge under a plea agreement. Applying L.B. 23 retroactively would have been "unfair to the State by introducing after the fact an element which it had no opportunity to consider when it made the bargain."[23]

The State compares this case to *Country*. It notes that L.B. 998 does not just reduce the punishment, but also distinguishes between persons with and without a blood or breath alcohol concentration of at least .02. In that sense, L.B. 998 "created a new category of crime."[24] The State claims that it would be unfair to apply L.B. 998 retroactively because

---

[19] See L.B. 23, § 4.

[20] *State v. Country, supra* note 14, 194 Neb. at 573-74, 234 N.W.2d at 595.

[21] *Id.* at 574, 234 N.W.2d at 595.

[22] *Id.* See L.B. 23, § 1.

[23] *State v. Country, supra* note 14, 194 Neb. at 575, 234 N.W.2d at 596.

[24] Brief for appellee at 9.

Duncan's alcohol concentration was irrelevant when he committed the offense: "At the time the crime was committed, the State had no incentive to investigate that issue (beyond ruling out [driving under the influence]), to collect evidence of it, or to include any such evidence in the factual basis."[25]

Duncan, of course, disagrees. He argues that L.B. 998 did not "create a new crime."[26] Instead, he suggests that the Legislature "essentially reclassified the offense as a misdemeanor unless the person so charged had alcohol in his or her system, in which case, the offense would be classified as a felony."[27] Duncan contends that the State was on notice of the amendment because the change took effect more than 6 months before he pleaded no contest.

As Duncan points out, there are several differences between this case and *Country*. In *Country*, the amendment took effect after the State reached a plea agreement with the defendant. In contrast, L.B. 998 became effective well before the State agreed to dismiss the driving during revocation charge. Moreover, the legislative history shows that L.B. 998's main purpose—at least before a welter of unrelated floor amendments—was to reduce the punishment for driving without an ignition interlock device.[28]

[4] But L.B. 998 did not merely reduce the penalty for driving without an ignition interlock device. It also introduced a new substantive element: Whether the offender's breath or blood alcohol concentration was .02 or higher. The State had no reason to gather such evidence when Duncan's criminal act occurred. Even if such evidence could still be adduced at this point, an evidentiary hearing would be necessary. As we explained in *Country*, we assume that the Legislature does not

---

[25] *Id.* at 9-10.

[26] Brief for appellant at 16.

[27] *Id.*

[28] See, Judiciary Committee Hearing, L.B. 998, 103d Leg., 2d Sess. 8 (Jan. 31, 2014); Floor Debate, 103d Leg., 2d Sess. 75, 76, 78 (Mar. 20, 2014).

want us to apply mitigatory amendments to pending cases if doing so would require a new evidentiary hearing.

Put simply, Duncan is not entitled to a lesser punishment under L.B. 998, because it is not clear if he would, in fact, be punished less severely under the law as amended. We do not know what his offense would be under L.B. 998 because the record lacks evidence of the alcohol concentration of his breath or blood. And we will not remand the cause for an evidentiary hearing to find out. So, the district court correctly sentenced Duncan under the law in effect when the criminal act occurred.

## Excessive Sentence

Duncan argues that his sentence is excessive. He notes that this is his first felony conviction, that he completed intensive outpatient treatment in 2013, and that driving without an ignition interlock device is a nonviolent crime. Duncan does not argue that the court should have placed him on probation, but he believes that a prison sentence is inappropriate.

[5] The principles of law governing the review of sentences are so familiar that we need not repeat them here.[29] An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion.[30] Duncan's sentence is within the statutory limits for a Class IV felony.[31]

The court stated that imprisonment was "necessary for the protection of the public because the risk is substantial that, during any period of probation, [Duncan] would engage in additional criminal conduct and because a lesser sentence would depreciate the seriousness of [Duncan's] crimes and promote disrespect for the law." At the sentencing hearing, the court told Duncan that "at some point you've got to treat these things seriously."

---

[29] See *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

[30] See *id*.

[31] See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014).

We conclude that Duncan's sentence is not an abuse of discretion. His criminal history did not include any felonies, but it was extensive. Duncan's crimes include three convictions for driving under the influence and four assault convictions. The probation investigation assessed him as a "very high risk to reoffend." And a sentence of 1 to 2 years' imprisonment was considerably less than the maximum of 5 years' imprisonment for a Class IV felony.

## CONCLUSION

Duncan seeks the benefit of a mitigatory amendment that changed the substantive elements of the offense. The record does not show what crime Duncan committed under the statute as amended. So, he is not entitled to a more lenient sentence under the new law. His sentence is not otherwise excessive.

Affirmed.

Stacy, J., not participating.