IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. JACKSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ZACCHAEUS A. JACKSON, APPELLANT.

Filed January 20, 2026.    Nos. A-25-314 through A-25-316.

Appeals from the District Court for Phelps County: MORGAN R. FARQUHAR, Judge. Affirmed as modified.

Nancy S. Freburg, Phelps County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Zacchaeus A. Jackson appeals from his plea-based convictions in three consolidated cases, contending that the sentences imposed are excessive. The State raises a potential issue of plain error regarding the district court's imposition of credit for time served to some, but not all, of Jackson's sentences imposed during the same sentencing hearing; however, the State argues that the sentences here do not rise to the level of plain error "because Jackson was not prejudiced, and no miscarriage of justice resulted from the jail credit procedure [used by the district court]." Brief for appellee at 21. For the reasons set forth herein, we affirm as modified.

## STATEMENT OF FACTS

### BACKGROUND

In CR24-6, Jackson was charged with eight counts of assault by strangulation, all Class IIIA felonies; one count of third degree domestic assault, a Class I misdemeanor; and one count of possession of a firearm during the commission of a felony, a Class II felony, for events that occurred on January 30, 2024.

In CR24-12, Jackson was charged with second degree domestic assault, a Class IIIA felony, and possession of a firearm during the commission of a felony, a Class II felony, for events that occurred on January 5, 2024.

In CR24-13, Jackson was charged with terroristic threats, a Class IIIA felony, and possession of a firearm during the commission of a felony, a Class II felony, for events that occurred on or about August to October 2023.

### GLOBAL PLEA AGREEMENT

Pursuant to a global plea agreement, Jackson pled no contest to amended informations in CR24-6, CR24-12, and CR24-13. In CR24-6, Jackson pled no contest to two counts of assault by strangulation, both Class IIIA felonies; and one count of possession of a firearm during the commission of a felony, a Class II felony. In CR24-12, Jackson pled no contest to one count of second degree domestic assault, a Class IIIA felony. In CR24-13, Jackson pled no contest to one count of terroristic threats, a Class IIIA felony; and one count of possession of a firearm during the commission of a felony, a Class II felony.

In lieu of a factual basis, the State offered into evidence, and the court received, the law enforcement officer's affidavit in support of an arrest warrant for Jackson. Summarized, the factual basis provided that on January 29, 2024, a friend of the victim, Hannah Watson, notified police that the victim had texted her a "safe word" designed to inform Watson when the victim needed law enforcement assistance. When police arrived at the home of Jackson and the victim, who were married, the officer observed a large bruise and "goose egg" lump on the victim's forehead. The officer attempted to speak to the victim outside of the residence under the guise of a dog license complaint. During the victim's interaction with the officer, she would not tell the officer how she had received her injuries.

After departing the victim and Jackson's residence, the officer contacted Watson, who informed the officer that around Christmas 2023, the victim told her about the abuse she was suffering, and they arranged a "safe word" in case the victim needed help. On January 31, 2024, Watson provided to law enforcement a written statement and multiple screenshots of text messages of her conversations with the victim. Watson also told law enforcement that Jackson "always carries two loaded guns on him and at one point he put a gun to [the victim's] head." In reviewing the screenshots provided by Watson, the officer noted that there was a possible episode of domestic violence that occurred around January 5, in which the victim stated that Jackson apologized for hitting her arm, to which the victim told Watson that Jackson "hasn't seen my legs and ass yet." At apparently around the same time, the victim and Jackson spoke about counseling, Jackson stated that he did not need any counseling, and the victim asked Jackson if she could attend counseling alone. Jackson responded that "he was going to whoop her again just for saying that." Later, that

same day, Jackson stated that "if one more [thing] happen[ed] [he's] going to beat [the victim] to a pulp and he'll go to jail. He said he'll beat [the victim and their two children]" and that "he will have no mercy." On January 7, in another text message exchange between the victim and Watson, the victim stated that Jackson had "three guns all loaded" and that she was going to have to lie if law enforcement arrived "because she doesn't want [Jackson] shooting her at that moment." The victim also stated that Jackson would be arrested "if she went to the police and showed them all [of her] bruises" but Jackson was always with her or stalking her. The victim sent another text message stating that Jackson had threatened to shoot her family. And in text messages from January 29, the victim messaged Watson the safe word but shortly afterward she told Watson, "don't do anything." Later that evening, the victim sent Watson

> photos of her neck with multiple scratches on her upper chest and neck area, forehead with a large bruise, and a message stating [that Jackson] caused the scratches during one of the 8 times [Jackson] choked her. [The victim] then sent a message that [Jackson] headbutted her in the forehead.

The State noted that "further investigation indicated that . . . Jackson was carrying a concealed weapon in the waistband of his pants during the events that are detailed in the affidavit." Jackson did not object to the factual basis provided by the State.

SENTENCING HEARING

A combined sentencing hearing was held for all three cases. During the sentencing hearing, the victim read a statement which set forth, in part, that Jackson

> didn't just hurt me, he tore apart every notion I have of love, safety, and a family. He didn't stop at breaking my spirit. He made sure to leave deep, lasting scars on me and my children . . . .
>
> . . . He was a destructive force, a source of constant fear and chaos, and the damage he caused still lingers. The abuse didn't only happen behind closed doors. It escalated to truly horrifying levels while I was pregnant with our son . . . .
>
> The man who was supposed to protect me and cherish the life growing inside of me, did the exact opposite. He choked me, slammed me into the floor, and would punch me in my arms so the bruises wouldn't show, all while I was carrying his child. Looking back[,] it's still impossible for me to grasp the cruelty of those moments, knowing he showed no regard for my life or the life of our unborn son.

The victim also stated that "I need the Court to understand that this wasn't a single act or a fleeting moment of anger. It was a pattern of deliberate, calculated violence . . . ."

During allocution, Jackson expressed remorse, stated that he takes full responsibility for his actions, and that he was "extremely sorry for the pain that I've caused all my loved ones." He further expressed regret for time lost with his family and stated that, if sentenced to probation, he could be more present both emotionally and financially for his sons.

The court stated that it had reviewed the presentence investigation report (PSR), including the addendums and reports contained therein. The court advised that it had

considered your age, your mentality, your education, your social and cultural background, generally your life experiences. I've also considered your past criminal behavior, any law-abiding or prosocial activities that you've taken part in . . .

I've also considered the conduct and the motivation of the specific offenses as well as the nature of the offenses, whether anyone was hurt or injured or if any property was damaged as part of these cases.

The court also noted that Jackson was assessed as a high risk to reoffend, scored in the high risk range for pro-criminal attitude, and that the PSR noted that Jackson had issues with violence, antisocial aggressiveness, and stress coping. The court acknowledged that Jackson's family "seems to be good people" but that Jackson engaged "in systematic, physical violence towards [Jackson's] spouse." The court then stated:

Based on the totality of the circumstances and the severity of the offenses and the fact that these offenses were committed when you had . . . a supportive family, you had trade skills, and the way in which the offenses affected the victim . . . is worth pointing out.

I think the State is correct in pointing out this was not an isolated incident. It really was a pattern of abuse that was ongoing. The first offenses were violent and unexplainable as were the last circumstances for the last case. And that behavior, even after the contact that you had with law enforcement, it apparently continued, even after that point.

The court found that Jackson was not a suitable candidate for probation, that Jackson posed a risk to the victim, and that a sentence of probation would depreciate the serious nature of the offenses and promote a disrespect for the law.

In CR24-6, the court sentenced Jackson to 30 to 36 months' imprisonment with no post-release supervision for each of his two convictions for strangulation and to 12 to 14 years' imprisonment with no post-release supervision for his conviction of possession of a firearm during the commission of a felony. These sentences were ordered to be served concurrently with each other but consecutively to the sentences imposed in CR24-12 and CR24-13. The court awarded credit for 426 days' time served to be imposed in CR24-6 and not to the sentences imposed in either CR24-12 and CR24-13.

In CR24-12, the court sentenced Jackson to 30 to 36 months' imprisonment with no term of post-release supervision for second degree domestic assault and ordered the sentence to be served consecutively to the sentences imposed in CR24-6 and CR24-13. The court specifically stated that the "426 days of jail credit [was] to be applied only to the sentences imposed in CR-24-6 and not to the sentences imposed under this case number [CR24-12] or under CR24-13."

Finally, in CR24-13, the court sentenced Jackson to 30 to 36 months' imprisonment with no term of post-release supervision for his terroristic threats conviction and sentenced him to 10 to 12 years' imprisonment for his possession of a firearm during the commission of a felony conviction. Similarly to CR24-12, the court "ordered the sentences imposed on each of these two counts to be run concurrently with one another but that additional sentences imposed by the Court in case numbers CR24-6 and CR24-12 were to run and be served consecutively to the sentence imposed in this case." The court further ordered that Jackson's 426 days of jail credit "was to be

- 4 -

applied only to the sentences imposed in CR24-6 and not to the sentences imposed in either CR24-12 or CR24-13."

## ASSIGNMENT OF ERROR

In these consolidated cases, Jackson alleges that the district court imposed excessive sentences.

## STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

## ANALYSIS

### EXCESSIVE SENTENCES

In these three consolidated cases, Jackson contends that the sentences imposed are excessive. Specifically, he claims that the court failed to adequately consider factors, including his young age, employment, lack of criminal history, support from family and friends, the recommendations he received for ongoing individual therapy and treatment for depressive symptoms, and his acceptance of responsibility for his actions.

Here, Jackson was sentenced for two Class II felonies and four Class IIIA felonies. Regarding Jackson's four Class IIIA felony convictions, since the time of Jackson's sentencing and while this case has been on appeal, § 28-105 was amended by 2025 Neb. Laws, L.B. 150, § 25, which became effective on September 3, 2025. The amended statute established lesser minimum penalties for Class IIIA felony convictions. Pursuant to the *Randolph* doctrine, when the Legislature amends a criminal statute by mitigating the punishment after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature specifically provided otherwise. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). See also *State v. Randolph*, 186 Neb. 297, 183 N.W.2d 225 (1971). For purposes of the *Randolph* doctrine, if a defendant appeals his or her sentence, then the sentence is not a final judgment until the entry of a final mandate. See *State v. Duncan*, 291 Neb. 1003, 870 N.W.2d 422 (2015). Here, because Jackson timely filed an appeal and a final mandate has not yet been entered, he is entitled to receive the benefit of the lesser sentencing range. Neb. Rev. Stat. § 28-105 (Supp. 2025) provides that Class IIIA felonies are punishable by a minimum of no imprisonment and a maximum of 3 years' imprisonment followed by 0 to 18 months' post-release supervision and/or a $10,000 fine. Jackson's sentences of 30 to 36 months' imprisonment with no post-release supervision for each of his four Class IIIA felony convictions (two counts of strangulation; one count of second degree domestic assault; one count of terroristic threats) are within the applicable statutory sentencing range.

Regarding the sentences imposed for Jackson's two Class II felony convictions of possession of a firearm during the commission of a felony, the district court sentenced Jackson to 12 to 14 years' imprisonment on one count and 10 to 12 years' imprisonment on the other count. See Neb. Rev. Stat. § 28-1205 (Cum. Supp. 2024) (use of deadly weapon to commit felony; possession of deadly weapon during commission of felony). These sentences are within the statutory sentencing ranges for Class II felonies, which are punishable by a minimum of 1 year of

imprisonment and a maximum of 50 years' imprisonment. See § 28-105. And, in addition to Jackson's sentences being within the applicable statutory sentencing ranges, he received a substantial benefit from his plea agreement, in which six Class IIIA felonies, a Class II felony, and a Class I misdemeanor were dismissed.

It is well established that an appellate court will not disturb sentences within the statutory limits unless the district court abused its discretion in establishing the sentences. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *Id*.

The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

We further note that Jackson's claim that the court failed to properly weigh the relevant factors relating to sentencing is merely a request for this court to conduct its own de novo review of those factors. It is not the proper function of an appellate court to conduct a de novo review of the record to determine what sentence it would impose. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025).

The presentence investigation report reflected that Jackson was 24 years old, divorced, and has two dependents. He has earned an associate's degree. He has no prior criminal history. The level of service/case management inventory assessed Jackson as a high risk to reoffend. The substance abuse questionnaire assessed that Jackson was a problem risk for violence. Jackson completed a psychological evaluation as part of the presentence investigation with the psychologist diagnosing Jackson with adjustment disorder with depressed mood and unspecified personality disorder with antisocial features with recommendations that Jackson participate in ongoing individual therapy or counseling. Jackson also enrolled in a domestic violence intervention program and was using funds earned while working in the jail to pay his child support obligation. The PSR also included numerous letters of support for Jackson, including from correctional officers who described him as respectful, helpful, and a hard worker.

The PSR also included a letter from the victim in which she expressed the harm she suffered from Jackson's actions. She described him as "a destructive force" and "a source of constant fear and chaos." She described that Jackson "choked me, slammed me onto the floor, and punched me in the arms so the bruises wouldn't show." She expressed that Jackson's abuse "shattered my self-worth, undermined my trust in people, and left me questioning whether I deserved any happiness at all." She further stated that "I need the court to understand that this wasn't a single act or a fleeting moment of anger- it was a pattern of deliberate, calculated violence, and it escalated even while I was pregnant with his child. [Jackson] tore away our peace, our security, and our sense of hope."

Based on factors including that the sentences imposed are within the applicable statutory sentencing ranges, the benefit that Jackson received from the global plea agreement, his high risk to reoffend, the nature of the offenses, and the harm caused to the victim, the sentences imposed by the court were not an abuse of discretion.

PLAIN ERROR

In its brief, the State noted that the district court erred in applying Jackson's credit for time served to only one of the three cases during the combined sentencing hearing. Although the State acknowledges that *State v. Nelson*, 318 Neb. 484, 16 N.W.3d 883 (2025), requires credit for time served to be applied to the aggregate of all terms imposed, the State argues that this error does not rise to the level of plain error, noting:

> For an appellate court to find plain error, the error must be plainly evident from the record, and it must be such that it prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity reputation, and fairness of the judicial process. *State v. Senteney*, 307 Neb. 702, 711 (2020). Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur. *Id*. Because this criteria does not exist here there is no plain error.

Brief for appellee at 20. We disagree with the State and find that the court's failure to apply Nelson's credit for time served to his aggregate sentence does constitute plain error.

The Nebraska Supreme Court recently held in *State v. Nelson, supra*, that when a court imposes multiple sentences contemporaneously, whether such sentences are ordered to be served consecutively or concurrently, all available credit for time served under Neb. Rev. Stat. § 83-1,106(1) (Reissue 2024) is applied just once, to the aggregate of all terms imposed. It also clarified that when a court applies all available credit against the aggregate of all sentences imposed contemporaneously, there is no reason to mechanically attach such credit to any particular sentence. See *Nelson, supra*. The formality of identifying just one sentence to receive all available credit is neither accurate, nor necessary, when all available credit is being applied to the aggregate of all terms imposed. *Id*. When a sentencing error is noted on direct appeal, an appellate court can modify the sentence. *State v. Adams*, 320 Neb. 316, 27 N.W.3d 23 (2025).

Pursuant to the Nebraska Supreme Court's dictates in *Nelson*, we modify the sentencing orders in CR24-6, CR4-12, and CR24-13 to state that "Jackson is entitled to 426 days of credit for time against the aggregate of all terms imposed in CR24-6, CR24-12, and CR24-13."

CONCLUSION

In sum, we affirm Jackson's convictions and sentences but modify Jackson's credit for time served to apply to the aggregate of all terms imposed in CR24-6, CR24-12, and CR24-13.

AFFIRMED AS MODIFIED.