Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:09 PM CDT

State of Nebraska, appellee, v. Joshua
Joseph Guardiola, appellant.

___ N.W.3d ___

Filed May 28, 2024.    No. A-23-584.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision.

2. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

3. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

4. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

5. ____: ____. The mode and manner of appeal is statutory, and a litigant who complies with the requirements of the applicable statute is entitled to a review of the case to the extent of the scope provided by law.

6. **Constitutional Law: Statutes: Jurisdiction: Time: Appeal and Error.** The appellate jurisdiction of a court is contingent upon timely compliance with constitutional or statutory methods of appeal.

7. **Jurisdiction: Appeal and Error.** An appellate court acquires jurisdiction over an action when a notice of appeal has been filed and a docket fee has been paid.

8. **Jurisdiction: Affidavits: Fees: Appeal and Error.** In lieu of depositing the required docket fee, Neb. Rev. Stat. § 29-2306 (Reissue 2016) allows a criminal defendant to request to proceed in forma pauperis on

appeal, and, in this situation, a poverty affidavit serves as a substitute for the docket fee otherwise required upon appeal.

9. **Courts: Jurisdiction: Affidavits: Waiver: Appeal and Error.** If an alleged defect in a poverty affidavit has to do with the substantive allegations in the affidavit or otherwise involves the merits of whether the district court should grant the application to proceed in forma pauperis, the issue is not jurisdictional and is waived if not raised in the district court.

10. **Jurisdiction: Affidavits.** A jurisdictional issue exists if the affidavit lacks one of the hallmarks of an affidavit such as the signature of the affiant and a certificate of an authorized officer.

11. **Affidavits: Good Cause: Appeal and Error.** Absent good cause evident in the record, it is a jurisdictional defect for the impoverished appellant to fail to personally sign before a notary the affidavit that substitutes for the payment of fees and costs and the posting of security.

12. **Courts: Jurisdiction: Affidavits.** The relative staleness of the execution of a poverty affidavit is not a jurisdictional issue; rather, it is a relevant consideration by the district court in determining whether the party filing the application has sufficient funds to pay costs, fees, or security.

13. **Judges: Evidence: Appeal and Error.** The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding relevancy will not be reversed absent an abuse of discretion.

14. **Criminal Law: Statutes: Legislature: Sentences.** Generally, under *State v. Randolph*, 186 Neb. 297, 183 N.W.2d 225 (1971), when the Legislature amends a criminal statute by mitigating the punishment after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature specifically provided otherwise.

15. ____: ____: ____: ____. The doctrine under *State v. Randolph*, 186 Neb. 297, 183 N.W.2d 225 (1971), does not apply if the Legislature created a new crime rather than merely changing the penalty for an existing crime.

16. **Sentences: Final Orders: Appeal and Error.** If a defendant appeals his or her sentence, then the sentence is not a final judgment until the entry of a final mandate.

Appeal from the District Court for Hall County: Patrick M. Lee, Judge. Affirmed in part, and in part vacated and remanded for resentencing.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

Moore, Bishop, and Arterburn, Judges.

Bishop, Judge.

## INTRODUCTION

Following a jury trial in the Hall County District Court, Joshua Joseph Guardiola was convicted of possession of a controlled substance and sentenced to 10 to 15 years' imprisonment. Guardiola appeals, claiming the district court erred in excluding certain evidence and imposing an inappropriate sentence in light of a recent change to the habitual criminal statute. See Neb. Rev. Stat. § 29-2221 (Supp. 2023). We affirm Guardiola's conviction. However, because we conclude that Guardiola's current and prior felony convictions place him in a lower sentencing range under the amended version of § 29-2221, we vacate his sentence and remand the cause for resentencing.

## BACKGROUND

### Charges

On October 27, 2022, the State filed an information charging Guardiola with three counts: count I, possession of a controlled substance (methamphetamine), a Class IV felony, pursuant to Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2020); count II, possession of marijuana (less than 1 ounce), an infraction, pursuant to § 28-416(13)(a); and count III, possession of drug paraphernalia, an infraction, pursuant to Neb. Rev. Stat. § 28-441 (Cum. Supp. 2020). Count I of the information also alleged Guardiola was a habitual criminal, pursuant to § 29-2221(1), stating:

> [Guardiola] is a habitual criminal, being twice convicted of a crime, sentenced and committed to prison for terms of not less than one year each, to-wit: That [Guardiola] was convicted of the offense of Assault on a Police Officer 3rd Degree . . . on May 30th, 2000[,]

and sentenced to a term of 15 months to 30 months in the Nebraska Penal & Correctional Complex; and that [Guardiola] was convicted of the offense of Aiding and Abetting Robbery . . . on January 12th, 2011[,] and sentenced to a term of 3 years to 5 years in the Nebraska Penal & Correctional Complex; and that [Guardiola] was convicted of the offense of Assault 2nd Degree on September 5th, 2013[,] . . . and sentenced to a term of 3 years to 5 years in the Nebraska Penal & Correctional Complex . . . .

On March 22, 2023, the State moved to dismiss counts II and III of the information, and the district court granted the motion.

## Trial and Sentencing

Trial was held on March 22, 2023. Evidence was presented through photographs, video recordings, and testimony from law enforcement, a crime laboratory technician, an analyst, and Guardiola.

Damian McAlevy testified that he had been an officer with the Grand Island Police Department for over 4 years. On May 1, 2022, he received a call for service regarding a reported disturbance involving "a male and female" who were "yelling at each other." Officer McAlevy made contact with the male, who identified himself as Guardiola. During the encounter, Officer McAlevy learned that Guardiola had an active warrant for his arrest and, in the process of completing the arrest, Officer McAlevy searched Guardiola. Guardiola informed Officer McAlevy that he had "dope on him," as well as "Delta-8 THC, and a glass pipe" and that those items were located "in his pants area." Officer McAlevy understood "dope" to mean methamphetamine; this understanding was based on his training and experience. He had "numerous contacts with individuals identifying dope as being the same term for methamphetamine and not any other substance."

According to Officer McAlevy, while searching Guardiola, he located a cigarette pack containing a "white crystalline substance" wrapped in a piece of plastic torn from a grocery bag. Guardiola was wearing two pairs of pants and had made a makeshift pocket by rolling up one of the pant legs, which is where the cigarette pack was located. The "white crystalline substance" was subject to testing by the Nebraska State Patrol Crime Laboratory and determined to be methamphetamine. Officer McAlevy also found a glass pipe in Guardiola's pants that, based on his experience, he believed was a pipe "used for the smoking of controlled substances . . . [u]sually methamphetamine." Officer McAlevy also found marijuana on Guardiola that was wrapped in a piece of plastic torn from a grocery bag. On cross-examination, when asked whether he knew where the methamphetamine found on Guardiola initially "came from, like a store or anything like that," Officer McAlevy responded, "No, I don't know."

Photographs of the glass pipe and methamphetamine were received into evidence, as well as Officer McAlevy's body camera footage of his encounter with Guardiola. The footage was consistent with Officer McAlevy's testimony and further showed that when Officer McAlevy arrived on the scene, Guardiola was arguing with a woman driving a van. Guardiola identified the woman as his girlfriend. On cross-examination, Guardiola's counsel asked Officer McAlevy whether Guardiola's girlfriend was searched. The State objected to the question based on relevance, and the district court sustained the objection. Outside the presence of the jury, Guardiola's counsel made an offer of proof, asking Officer McAlevy what his response would be if asked whether Guardiola's girlfriend was searched. Officer McAlevy stated that she was not searched.

Guardiola testified that the cigarette pack did not belong to him. When asked how he came into possession of it, he stated that he was getting ready to go to the store with his girlfriend

when a friend asked to borrow his truck. He declined but his friend insisted on taking the truck and jumped into the vehicle. He stated that he "jumped out" and warned his friend that his girlfriend would be upset. Guardiola's friend then instructed him to "just take this stuff," and Guardiola stated he "grabbed everything she gave [him]." Guardiola testified that the cigarette pack was among the items his friend gave him and that he was not aware of its contents at that time. Guardiola denied telling Officer McAlevy that he had methamphetamine on him. Guardiola admitted that he mentioned to Officer McAlevy that he had marijuana and "dope," but claimed that "dope" was "the terminology used for marijuana these days." On cross-examination, Guardiola explained that he listed dope and marijuana separately when speaking to Officer McAlevy because he was unsure if the substance he possessed was "Delta-8 or marijuana." He testified that "meth is its own category. Meth is meth."

During closing arguments, the State argued that on May 1, 2022, Guardiola was knowingly in possession of methamphetamine. Guardiola argued that, while he indeed had the cigarette pack on his person at the time of the search, he was unaware the cigarette pack contained methamphetamine. After deliberation, the jury found Guardiola guilty of possession of a controlled substance, and the district court accepted the jury's verdict.

A hearing was held on July 5, 2023, regarding the habitual criminal enhancement, as well as sentencing. The district court received into evidence transcripts from cases in which Guardiola was previously convicted of: third degree assault on a peace officer, a Class IIIA felony (sentenced to 15 to 30 months' imprisonment); aiding and abetting a robbery, a Class II felony (sentenced to 3 to 5 years' imprisonment); and second degree assault, a Class III felony (sentenced to 3 to 5 years' imprisonment). The court found that Guardiola was a habitual criminal and sentenced him to 10 to 15 years' imprisonment with 71 days' credit for time served. Guardiola

was also sentenced for convictions in a separate case during the hearing. A written sentencing order was entered that same day.

## Appeal

On July 31, 2023, Guardiola filed a notice of appeal with the district court, as well as a motion to proceed in forma pauperis and a poverty affidavit signed by Guardiola on May 5. The court granted Guardiola's motion to proceed in forma pauperis on July 31, noting that "upon examination of the Affidavit, it appears that the appeal is being prosecuted in good faith," and that Guardiola was "authorized to proceed with this appeal in forma pauperis."

The State subsequently filed a motion with this court on October 26, 2023, seeking summary dismissal of Guardiola's appeal, alleging that Guardiola's poverty affidavit filed in lieu of a docket fee was not proper, and therefore this court lacked jurisdiction over the appeal. One poverty affidavit in our record shows a file-stamped date of July 31, 2023, and it consists of two pages: the first page contains Guardiola's averments and signature (on May 5) and the second page contains a certificate of service. Another poverty affidavit in our record shows a file-stamped date of October 23, under which the file stamp for July 31 can be seen in part. This poverty affidavit contains the same two pages as the other affidavit but includes a middle page reflecting the notary public's signature confirming the document being "subscribed and sworn to" before her on May 5. Notably, although the notary public's signature and confirmation were present in this document, her notarial seal was not. A supplemental transcript was filed containing an affidavit of the notary public attesting to being a notary in the State of Nebraska on May 5 and attaching a copy of her notarial certificate. In its motion to summarily dismiss Guardiola's appeal, the State argued that the poverty affidavit was defective because, as initially filed, it did not contain a notary public's authentication. We declined to

grant the State's motion for summary dismissal and instructed the parties to brief the issue of jurisdiction.

## ASSIGNMENTS OF ERROR

Guardiola assigns, restated, that the district court erred in (1) not allowing testimony that his girlfriend was not searched and (2) imposing an inappropriate sentence in light of a recent change to the habitual criminal statute.

## STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

[2,3] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*.

[4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

## ANALYSIS

### JURISDICTION

[5,6] We first address the State's contention that we lack jurisdiction over Guardiola's appeal because the poverty affidavit was defective. The mode and manner of appeal is statutory, and a litigant who complies with the requirements of the applicable statute is entitled to a review of the case

to the extent of the scope provided by law. *State v. Blake, supra*. The appellate jurisdiction of a court is contingent upon timely compliance with constitutional or statutory methods of appeal. *Id.*

[7,8] Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2022) sets forth the procedure for perfecting an appeal and provides that an appellate court acquires jurisdiction over an action when a notice of appeal has been filed and a docket fee has been paid. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). In lieu of depositing the required docket fee, Neb. Rev. Stat. § 29-2306 (Reissue 2016) allows a criminal defendant to request to proceed in forma pauperis on appeal, and, in this situation, a poverty affidavit serves as a substitute for the docket fee otherwise required upon appeal. *State v. Greer, supra*. "If an application to proceed in forma pauperis is filed and granted, the Court of Appeals or Supreme Court shall acquire jurisdiction of the case when the notice of appeal is filed with the clerk of the district court." § 29-2306.

[9] If an alleged defect in a poverty affidavit has to do with the substantive allegations in the affidavit or otherwise involves the merits of whether the district court should grant the application to proceed in forma pauperis, the issue is not jurisdictional and is waived if not raised in the district court. See *State v. Dallmann*, 260 Neb. 937, 621 N.W.2d 86 (2000) (Nebraska Supreme Court proceeded to underlying merits of appeal, even though appellant's poverty affidavit did not state nature of action or that appellant believed he was entitled to redress as required by Neb. Rev. Stat. § 25-2301.01 (Reissue 2016)).

[10,11] However, a jurisdictional issue exists if the alleged defect is that the affidavit lacks one of "the hallmarks of an affidavit such as the signature of the affiant and a certificate of an authorized officer." *State v. Ruffin*, 280 Neb. 611, 618, 789 N.W.2d 19, 25 (2010) (despite district court's grant of appellant's motion to proceed in forma pauperis, appellate jurisdiction did not vest because poverty affidavit was signed

by appellant's attorney instead of appellant and there was no good cause shown why appellant could not do so himself). Absent good cause evident in the record, it is a jurisdictional defect for the impoverished appellant to fail to personally sign before a notary the affidavit that substitutes for the payment of fees and costs and the posting of security. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

[12] We begin by first pointing out that Guardiola signed the poverty affidavit on May 5, 2023, but did not file it until July 31 when he filed his appeal. The State did not challenge this aspect of the poverty affidavit, likely because the Nebraska Supreme Court recently held that the "relative staleness of the *execution* of a poverty affidavit" is not jurisdictional; rather, it is a relevant consideration by the district court in determining whether the party filing the application has sufficient funds to pay costs, fees, or security. *State v. Blake*, 310 Neb. at 788, 969 N.W.2d at 415.

However, the State alleges a defect with Guardiola's poverty affidavit for a different reason. It claims that "the initial poverty affidavit filed on July 31, 2023[,] was not notarized and the second poverty affidavit filed on October 23, 2023[,] was untimely." Brief for appellee at 13-14. As previously set forth, authentication of a poverty affidavit by a notary public and the timeliness of the document's filing are jurisdictional issues. See *State v. Ruffin, supra.* However, we find the record supports that Guardiola's poverty affidavit was sufficiently executed at the time it was initially filed on July 31.

It appears that the second page of Guardiola's poverty affidavit, containing the notary's verification of his signature on May 5, 2023, was inadvertently excluded in Guardiola's original electronic filing on July 31. However, supplemental transcripts were filed demonstrating that a notary public had verified Guardiola's signature on May 5. And although the notary public failed to place her notarial seal by her signature in the poverty affidavit, an additional supplemental transcript was filed containing the notary's affidavit attesting to being

a notary public in the State of Nebraska on May 5, 2023, and attaching a copy of her notarial certificate.

The Nebraska Supreme Court has previously shown leniency in circumstances in which an appellant has filed an affidavit that appears insufficient on its face but may be a valid affidavit upon further showing. For example, in *State v. Haase*, 247 Neb. 817, 530 N.W.2d 617 (1995), the court provided the appellant with two opportunities to show that the poverty affidavit at issue was valid at the time it was filed. There, the poverty affidavit was signed before a notary but bore no notarial seal. The court issued an order directing the appellant to show cause why the appeal should not be dismissed. The appellant responded that the seal had been inadvertently left out in the original filing. The court then issued an order directing that an affidavit be filed attesting to whether, at the time the notary signed the original filing, the notary was a duly qualified notary public in the State of Nebraska. The appellant then responded that the notary was certified as a notary public in Iowa, not Nebraska, at the time the poverty affidavit was notarized in Nebraska. Pointing out that the power of a notary to perform notarial functions is limited to the jurisdiction in which the commission issued, the court found the poverty affidavit to be improper and dismissed the appeal.

Here, Guardiola demonstrated that his poverty affidavit was signed on May 5, 2023, as verified by a notary public that same day; it was therefore a proper affidavit at the time it was filed on July 31. Although the notary public's verification failed to include a notarial seal, this omission was satisfactorily cured upon the filing by the notary of an affidavit attesting to being a notary in the State of Nebraska on May 5 (when the affidavit was signed and verified), and attaching a copy of the notary public's notarial certificate confirming her active status in Nebraska from April 2022 through April 2026. Guardiola has established that the poverty affidavit he timely filed on July 31 was valid because it was personally

signed and authenticated by a notary public duly commissioned by the State of Nebraska.

Because the record sufficiently supports that the poverty affidavit in this case was properly executed and timely filed, this court has jurisdiction over Guardiola's appeal.

## Excluded Testimony

Guardiola claims that the district court erred when it sustained the State's relevancy objection and did not allow Officer McAlevy to testify that Guardiola's girlfriend was not searched. Guardiola argues that "[t]hroughout the trial, the decisive question became . . . Guardiola's knowledge of the methamphetamine on him." Brief for appellant at 8. He contends that the excluded testimony would have suggested that the methamphetamine "was placed on [him] without his knowledge." *Id*. Guardiola notes that he and his girlfriend were arguing on May 1, 2022, suggesting "some animosity between the two." *Id.* Guardiola further claims that his girlfriend was near him prior to Officer McAlevy's arrival and therefore, "she is a possible person to have placed the methamphetamine and/or marijuana on [him]." *Id*.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Rev. Stat. § 27-401 (Reissue 2016). According to Officer McAlevy, while searching Guardiola, he located a cigarette pack containing a "white crystalline substance" wrapped in a piece of plastic torn from a grocery bag. Guardiola was wearing two pairs of pants and had made a makeshift pocket by rolling up one of the pant legs, which is where the cigarette pack containing the methamphetamine was located. Even if Officer McAlevy was allowed to testify that Guardiola's girlfriend was not searched, that testimony would not have made it more or less probable that Guardiola was knowingly in possession of the methamphetamine. Regardless of whether Guardiola's

girlfriend may have also been in possession of methamphetamine herself, there was no evidence presented suggesting she had the opportunity to place such methamphetamine on him, which would have been difficult to do, considering the methamphetamine was found in a cigarette pack located in a makeshift pocket under Guardiola's second layer of pants.

Further, Guardiola testified that the cigarette pack containing the methamphetamine belonged to a female friend who borrowed his car (not his girlfriend). When the friend "jumped" into his truck and he "jumped out," the friend said to "just take this stuff," so Guardiola said he "grabbed everything she gave me." Guardiola testified that one of the items the friend gave him was the cigarette pack, but that he did not know it contained methamphetamine. As pointed out by the State, Guardiola "never claimed, during either his trial testimony or during the offer of proof, that the drugs or paraphernalia found on him came from [his girlfriend]," and therefore, whether Officer McAlevy testified about whether the girlfriend was searched was not relevant. Brief for appellee at 17-18. We agree.

[13] The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding relevancy will not be reversed absent an abuse of discretion. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). We find no abuse of discretion by the district court in sustaining the State's relevancy objection regarding whether Officer McAlevy searched Guardiola's girlfriend.

## Sentence

Guardiola was convicted of possession of a controlled substance, a Class IV felony, which does not carry a minimum sentence but is punishable by up to 2 years' imprisonment and 12 months' post-release supervision, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). However, Guardiola was subject to a habitual criminal enhancement under § 29-2221, which, at the time of his

sentencing, increased the sentencing range to a mandatory minimum of 10 years' imprisonment and a maximum of 60 years' imprisonment. But since the time of Guardiola's sentencing, and while this case has been on appeal, § 29-2221 was amended by 2023 Neb. Laws, L.B. 50, § 7, which became effective on September 2, 2023. The amended statute established lesser penalties for certain habitual criminal offenders. Guardiola argues, and the State agrees, that the penalty provision under which Guardiola was sentenced was modified prior to the final disposition of his case and that as such, under the *Randolph* doctrine, he is entitled to receive the benefit of the lesser sentencing range. See *State v. Randolph*, 186 Neb. 297, 183 N.W.2d 225 (1971).

[14-16] Under the *Randolph* doctrine, when the Legislature amends a criminal statute by mitigating the punishment after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature specifically provided otherwise. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). See, also, *State v. Randolph, supra*. The *Randolph* doctrine does not apply if the Legislature created a new crime rather than merely changing the penalty for an existing crime. See *State v. Chacon, supra*. For purposes of the *Randolph* doctrine, if a defendant appeals his or her sentence, then the sentence is not a final judgment until the entry of a final mandate. See *State v. Duncan*, 291 Neb. 1003, 870 N.W.2d 422 (2015). After Guardiola was sentenced on July 5, 2023, Guardiola timely filed an appeal, and thus, his sentence was not a final judgment for purposes of determining the applicability of the amended statute.

L.B. 50 added subdivision (1)(c) to § 29-2221, and the section now provides:

(1) Whoever has been twice convicted of a crime, sentenced, and committed to prison . . . for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual

criminal and shall be punished by imprisonment in a Department of Correctional Services adult correctional facility for a mandatory minimum term of ten years and a maximum term of not more than sixty years, except that:

. . . .

(c) If the felony committed and at least one of the prior felony convictions do not involve sexual contact, sexual penetration, the threat to inflict serious bodily injury or death on another person, the infliction of serious bodily injury on another person, a deadly or dangerous weapon, or a firearm, the mandatory minimum term shall be three years and the maximum term not more than the maximum term for the felony committed or twenty years, whichever is greater. For this subdivision (1)(c) to apply, no prior felony conviction may be a violation described in subdivision (1)(a) of this section.

Section 29-2221(1)(a) applies to violations of

28-303 [first degree murder], 28-304 [second degree murder], 28-308 [first degree assault], 28-313 [kidnapping], 28-319 [first degree sexual assault], 28-319.01 [first degree sexual assault of a child], 28-502 [first degree arson], 28-929 [first degree assault on an officer, emergency responder, state correctional employee, Department of Health and Human Services employee, or health care professional], or 28-1222 [using explosives to commit felony].

In order for Guardiola to qualify for the lesser 3-year mandatory minimum term and 20-year maximum term permitted under § 29-2221(1)(c), Guardiola's present "felony committed" *and* "at least one of [his] prior felony convictions" cannot "involve sexual contact, sexual penetration, the threat to inflict serious bodily injury or death on another person, the infliction of serious bodily injury on another person, a deadly or dangerous weapon, or a firearm." Also, "no prior felony conviction may be a violation described in subdivision (1)(a) of this section." § 29-2221(1)(c).

In seeking the habitual criminal enhancement in this case, the State relied upon Guardiola's prior convictions for third degree assault on a peace officer, aiding and abetting a robbery, and second degree assault. We can easily determine that Guardiola's present felony conviction for possession of a controlled substance does not involve any of the crimes listed in § 29-2221(1)(c). We can also determine that none of Guardiola's prior convictions submitted by the State were violations of any of the crimes set forth in § 29-2221(1)(a). Our remaining examination, therefore, focuses on whether "at least one of [his] prior felony convictions" did not involve any of the crimes identified in § 29-2221(1)(c).

We begin by noting that none of Guardiola's prior felony convictions involved sexual contact or sexual penetration. We therefore consider only whether one of his prior convictions did not involve a "threat to inflict serious bodily injury or death on another person, the infliction of serious bodily injury on another person, a deadly or dangerous weapon, or a firearm." § 29-2221(1)(c).

At the time of Guardiola's 2000 conviction for third degree assault on a peace officer pursuant to Neb. Rev. Stat. § 28-931 (Cum. Supp. 2004), the offense required the following elements:

> A person commits the offense of assault on an officer in the third degree if he or she intentionally, knowingly, or recklessly causes bodily injury to a peace officer or employee of the Department of Correctional Services while such officer or employee is engaged in the performance of his or her official duties.

Although the statute required the infliction of "bodily injury," it did not require infliction of "serious bodily injury." Notably, a person who "intentionally or knowingly causes serious bodily injury" to a peace office commits the offense of assault on an officer in the first degree. See Neb. Rev. Stat. § 28-929 (Cum. Supp. 2022). Therefore, "at least one" of Guardiola's prior felony convictions did not involve "sexual contact,

sexual penetration, the threat to inflict serious bodily injury or death on another person, the infliction of serious bodily injury on another person, a deadly or dangerous weapon, or a firearm" under § 29-2221(1)(c). Therefore, Guardiola is eligible to be sentenced under the lesser penalty range provided in § 29-2221(1)(c).

As pointed out by the State, "[f]or purposes of the *Randolph* doctrine, this clearly amounts to a reduction or mitigation of the penalty," and the Legislature has "provided no indication" that the statutory amendment is not retroactive, because Guardiola's conviction was not yet final due to his pending direct appeal. Brief for appellee at 20, 21. We agree that the requirements of § 29-2221(1)(c) were met in this case, and therefore, the applicable sentencing range for Guardiola was a mandatory minimum of 3 years' and a maximum of 20 years' imprisonment, rather than a mandatory minimum of 10 years' and a maximum of 60 years' imprisonment. Because the sentencing range that Guardiola was sentenced under was amended before final disposition of his case, Guardiola is entitled to retroactive relief to have his habitual criminal enhancement determined under § 29-2221(1)(c), as amended in 2023. We therefore vacate Guardiola's sentence and remand the cause for resentencing.

## CONCLUSION

We affirm Guardiola's conviction; however, we vacate Guardiola's sentence and remand the cause for resentencing.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED FOR RESENTENCING.