IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GUARDIOLA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOSHUA JOSEPH GUARDIOLA, APPELLANT.

Filed May 28, 2024.    No. A-23-582.

Appeal from the District Court for Hall County: PATRICK M. LEE, Judge. Affirmed.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Joshua Joseph Guardiola pled no contest to one count of strangulation, one count of third degree domestic assault, and one count of third degree assault on a pregnant woman. The Hall County District Court sentenced him to concurrent sentences of 1 to 3 years' imprisonment for each count, with credit for 49 days already served. On appeal, Guardiola contends that the sentences of imprisonment were inappropriate. We affirm.

## BACKGROUND

On October 27, 2022, the State filed an information charging Guardiola with six counts: count I, strangulation, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-310.01(2) (Cum. Supp. 2022) and habitual criminal, pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016) (§ 29-2221 has since been amended, providing a lesser sentencing range for certain habitual criminal offenders); count II, third degree domestic assault-subsequent offense, a Class IIIA felony, pursuant to Neb.

- 1 -

Rev. Stat. § 28-323 (Reissue 2016); count III, tampering with physical evidence, a Class II misdemeanor, pursuant to Neb. Rev. Stat. § 28-922(3)(a) (Cum. Supp. 2022); count IV, possession of marijuana (less than 1 ounce), an infraction, pursuant to Neb. Rev. Stat. § 28-416(13)(a) (Supp. 2023); count V, possession of drug paraphernalia, an infraction, pursuant to Neb. Rev. Stat. § 28-441 (Cum. Supp. 2022); and count VI, third degree assault against a pregnant woman, a Class IIIA felony, pursuant to Neb. Rev. Stat. §§ 28-310 (Reissue 2016) and 28-115 (Cum. Supp. 2022).

On April 18, 2023, the State filed an amended information dropping counts III, IV, and V of the information, as well as the habitual criminal enhancement for count I. That same day, Guardiola entered a plea of no contest to the remaining three counts in the amended information; a written order confirming the plea was also entered. At the plea hearing, the State informed the district court that a plea agreement had been reached; in exchange for Guardiola's plea of no contest, the State agreed to amend the information as previously set forth and to recommend that Guardiola's sentences for each conviction be served concurrently to each other and to a conviction in a separate case. The court confirmed with Guardiola that this was his understanding of the agreement.

The State provided the following factual basis:

[O]n or about August 20, 2022, officers responded to a report of assault. When officers arrived on the scene, they observed . . . Guardiola, on top of [the victim]. A witness reported seeing . . . Guardiola grab [the victim] by the neck, put her in a head lock, and throw her to the ground. This impeded [the victim's] breathing. She had physical injuries to her face and neck resulting from this occurrence. At the time, [the victim] was pregnant with . . . Guardiola's child.

All of this occurred in Hall County, Nebraska.

After advising Guardiola of his constitutional rights and the consequences of entering a plea of no contest, the district court accepted Guardiola's plea of no contest. The court further informed Guardiola of his right to an enhancement hearing for count II (third degree domestic assault-subsequent offense), which Guardiola waived. Guardiola affirmed to the court that he was previously convicted of domestic assault and was represented by an attorney in that case. As such, the court enhanced count II as a "subsequent offense." The court ordered a "Presentence Investigation Report" (PSR).

On July 5, 2023, a consolidated sentencing hearing was held for this case and Guardiola's conviction in a separate case. The district court sentenced Guardiola to 1 to 3 years' imprisonment for each conviction in this case, with the sentences running concurrently to each other, as well as to his sentence for a conviction in the separate case. Guardiola received credit for 49 days already served. A corresponding file-stamped order was entered that same day.

On July 31, 2023, Guardiola filed a notice of appeal with the district court, as well as a motion to proceed in forma pauperis and a poverty affidavit. The court granted Guardiola's motion to proceed in forma pauperis. The State later filed a motion with this court seeking summary dismissal of Guardiola's appeal, alleging that because Guardiola's poverty affidavit in lieu of a docket fee was not notarized, this court lacked jurisdiction over the appeal. We denied the State's motion for summary dismissal and directed the parties to present the issue in their briefs for later resolution. We have addressed the State's argument regarding the deficiency of Guardiola's

poverty affidavit in a case docketed at No. A-23-584, which involved the same facts and arguments pertinent to the poverty affidavit filed in this appeal. See *State v. Guardiola*, 32 Neb. App. 915, ___ N.W.3d ___ (2024). We will not repeat our analysis here, other than to state that we found Guardiola's poverty affidavit to be sufficient to confer jurisdiction in case No. A-23-584 and it is therefore sufficient to confer jurisdiction in the present appeal.

ASSIGNMENT OF ERROR

Guardiola assigns that the district court erred in imposing three concurrent sentences of 1 to 3 years' imprisonment; he claims that the sentences imposed are "inappropriate."

STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

ANALYSIS

Guardiola was convicted of one count of strangulation, one count of third degree domestic assault-subsequent offense, and one count of third degree assault on a pregnant woman. All three offenses were Class IIIA felonies, punishable by up to 3 years' imprisonment and 18 months of post-release supervision, a $10,000 fine, or both. For each count, Guardiola received a concurrent sentence of 1 to 3 years' imprisonment. Each of Guardiola's sentences were within the statutory range for a Class IIIA felony. As such, we review the court's sentencing determination for those offenses only for an abuse of discretion. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022) (when sentences imposed within statutory limits are alleged to be excessive, appellate court must determine whether sentencing court abused its discretion in considering well-established factors and applicable legal principles).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Guardiola was 41 years old at the time of sentencing. According to the PSR, Guardiola stated that he married his girlfriend, the victim in this case, a few days prior to the presentence investigation interview. Guardiola had two biological children and four stepchildren and owed $5,855.31 in unpaid child support. He did not complete high school or obtain a GED and was unemployed at the time of his arrest. He reported to the probation officer that he was unemployed "so he could take care of his mother's medical needs."

Guardiola's criminal history dating back to 1990 includes numerous assault-related convictions, several convictions for trespass, a few drug-related convictions, and more. The probation officer conducted a "Level of Service/Case Management Inventory" as part of the

presence investigation and Guardiola was assessed as a very high risk to reoffend. He scored in the "medium" risk range in the criminogenic risk factor domains for family/marital and alcohol/drug problems. He scored in the "high" risk range in the domains for education/employment and leisure/recreation. He scored in the "very high" risk range in the domains for criminal history, companions, procriminal attitude, and antisocial pattern. The probation officer noted that Guardiola's "use of strangulation is of particular concern because there is an elevated risk for future lethality for those who use strangulation as part of their offending pattern."

The probation officer stated that Guardiola "engage[d] in serious minimization of his criminal behavior and exhibit[ed] a high level of criminal thinking." Guardiola indicated during the interview that he was the true victim in this case, not his romantic partner. Further, "[t]he victim was pregnant at the time of this offense, but when asked about that during this interview [Guardiola] reported [the victim] wasn't pregnant and had never been pregnant." However, the probation officer noted that the victim indicated she had a miscarriage. The probation officer recommended that Guardiola partake in "[d]omestic violence intervention programing."

The probation officer reported that Guardiola had "trauma symptoms related to being sexually abused as a child." Guardiola told the probation officer that he had unwanted thoughts about the abuse, including "dreams and flashbacks." The probation officer suggested that "[t]rauma programming may be beneficial for [Guardiola]."

At the sentencing hearing, Guardiola's counsel stressed that Guardiola had a "very, very bad childhood" and had been a victim of abuse. He also emphasized that Guardiola cared for his disabled mother. Guardiola's counsel requested that the district court "consider imposing the minimum sentence with the understanding about the habitual criminal [enhancement]" for his conviction in the separate case. The State recommended that the sentence run concurrent to Guardiola's sentence for his conviction in the separate case. The State noted to the court that Guardiola was at a high risk of reoffending, he had an extensive criminal history, and he was not willing to take responsibility for his actions.

Guardiola personally informed the district court that he had suffered significant trauma as a child, having been the victim of sexual abuse "because [he] was black." He stated that he was victimized because he "was the only one [who was] different." As a result, he felt the need "to do certain things at certain times" to be perceived as "part of certain groups." He further stated that he had relied on substance use to alleviate anxiety resulting from his childhood trauma. Guardiola noted that he needed "drug treatment along with more spiritual guidance," which he would not receive while "locked up in a cell." He acknowledged that he had "messed up a lot in [his] life," but that he did not have anyone to help him. Guardiola wanted to remain out of prison so he could be present for his children.

The district court stated that it had considered all of the information presented at the hearing and the information in the PSR in determining an appropriate sentence. It pointed out that Guardiola had "significant legal issues in the late 90's, early 2000's" but that there was a significant period of time where Guardiola "stayed out of trouble until the last maybe six or nine months prior to these offenses." The court agreed with Guardiola that the criminal justice system in Nebraska had failed to "assist those who [we]re both in need and looking for assistance to truly rehabilitate themselves." The court expressed that it was "empathetic to that situation." However,

the court pointed out that Guardiola was facing a mandatory sentence of incarceration for a conviction in the separate case. The court then sentenced Guardiola as previously set forth.

On appeal, Guardiola argues that the district court "inappropriately applied the eight factors in fashioning [his] sentence." Brief for appellant at 7. He argues that his concurrent sentences of incarceration were inappropriate, considering his "childhood trauma, his background," and "his present mental and addiction needs." *Id.* at 6-7. He reiterated that he would "receive no mental health, drug addiction, or spiritual help while in jail." *Id.* at 6. Further, he stated that he would not be able to be present for his children while incarcerated.

At the sentencing hearing, the district court expressly stated that in crafting an appropriate sentence, it had considered Guardiola's age, mentality, education and experience, social and cultural background, past criminal record, as well as his significant period of law-abiding conduct, the motivation for the offenses, the nature of the offenses, and the nature of any violence involved. Further, it expressed empathy for Guardiola's circumstances and agreed that the carceral system did not provide sufficient mental health resources for those in need of such treatment. The court further stated that it had reviewed the PSR; the PSR contained almost all of the information regarding Guardiola's individual circumstances that he highlighted in his brief on appeal. To the extent that Guardiola's individual circumstances may weigh in favor of a more lenient sentence, our review of a sentencing order is limited to an abuse of discretion standard. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence. See *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017).

We further note that in case No. A-23-584 Guardiola received a sentence of incarceration for a conviction in a separate case where he received a habitual criminal enhancement. See *State v. Guardiola*, 32 Neb. App. 915, ___ N.W.3d ___ (2024). In that case, Guardiola was convicted of a Class IV felony, but his sentence was enhanced to a mandatory minimum of 10 years' imprisonment pursuant to § 29-2221(1). However, this court vacated that sentence and remanded for resentencing due to a 2023 amendment to the habitual criminal statute. When Guardiola is resentenced in case No. A-23-584, the lowest sentence he could receive is a mandatory minimum of 3 years' imprisonment. And since the district court ordered that Guardiola's concurrent sentences in this case will run concurrently to his sentence in that case, Guardiola will have to serve at least 3 years of imprisonment with no good time regardless of how much time he was ordered to serve in the present case. As such, his incarceration for all sentences in this case will be completed before he can complete whatever new sentence he receives for his separate conviction in case No. A-23-584, even if he is given the lowest possible sentence in that case on remand. The sentences ordered in this case were quite favorable to Guardiola and were certainly not an abuse of discretion.

For the sake of completeness, we note the State's observation in its brief that the three Class IIIA felonies in this case required determinate sentences rather than indeterminate sentences and the imposition of post-release supervision. See Neb. Rev. Stat. § 29-2204.02(1) and (4) (Reissue 2016) (court shall impose determinate sentence for Class III, IIIA, or IV felony and post-release supervision within applicable range, unless imposed consecutively or concurrently

- 5 -

with a sentence for a Class III, IIIA, or IV felony for an offense *committed prior to* August 30, 2015, or a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony; in such case, the court shall impose an indeterminate sentence within the applicable range that does not include a period of post-release supervision). The State indicated it was not going to "address the matter" since Guardiola did not challenge the sentences on the basis that they were indeterminate. Brief for appellee at 15. Regardless, we find no plain error.

Guardiola's convictions in the present case involve three Class IIIA felonies (all *committed after* August 30, 2015) and his conviction in case No. A-23-584 involves a Class IV felony (*committed after* August 30, 2015). This would ordinarily require imposing determinate sentences and post-release supervision for Guardiola's Class IIIA felonies. However, because Guardiola's Class IV felony conviction was enhanced under the habitual criminal statute, that enhancement required the imposition of an indeterminate sentence with a mandatory minimum sentence. Although the habitual criminal statute is not specifically identified as a higher class of felony in § 29-2204.02(4), it certainly operates like a Class IC or ID felony in that it contains a required mandatory minimum sentence and has no provision for post-release supervision. And as pointed out by the Nebraska Supreme Court, a defendant who is sentenced consecutively or concurrently to multiple crimes should not be subject to both parole and post-release supervision. See *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017) (observing that § 29-2204.02 was amended to prevent situation where defendant sentenced consecutively or concurrently to multiple crimes would be subject to both parole and post-release supervision).

Accordingly, we find no plain error in the district court's imposition of indeterminate sentences with no post-release supervision for Guardiola's Class IIIA felonies.

CONCLUSION

For the reasons set forth above, we affirm Guardiola's sentences.

AFFIRMED.